# Exhibit D

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WISTRON CORPORATION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> PHILLIP M. ADAMS & ASSOCIATES, LLC, *et al.*, <br><br> Defendants. <br> _____/ | No. C-10-4458 EMC <br><br> **ORDER GRANTING PLAINTIFFS' MOTION TO DISMISS COUNTS I AND II OF DEFENDANTS' COUNTERCLAIM; AND DENYING WITHOUT PREJUDICE PLAINTIFFS' MOTION FOR SANCTIONS** <br><br> **(Docket Nos. 52, 78)** |

Plaintiffs in this case are Wistron Corporation, Wistron Infocomm (Texas) Corporation, Wistron Infocomm Technology (America) Corporation, AOpen Incorporated, and AOpen America Incorporated. The Wistron entities are hereinafter collectively referred to as "Wistron" and the AOpen entities as "AOpen."

Defendants in this case Phillip M. Adams & Associates, LLC, AFTG-TG LLC, and Phillip M. Adams. Defendants are hereinafter collectively referred to as "Adams."

Wistron and AOpen initiated this action against Adams, seeking a declaration that certain patents owned by Adams are not valid and enforceable and that they do not infringe those patents. Adams has filed counterclaims for patent infringement and trade secret misappropriation. Currently pending before the Court is Wistron and AOpen's motion to dismiss. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby

**GRANTS** the motion to dismiss. In addition, the Court **DENIES** without prejudice Wistron and AOpen's motion for sanctions.

## I. FACTUAL & PROCEDURAL BACKGROUND

As alleged in the first amended complaint ("FAC"), "Wistron Corp. is in the business of designing, developing and manufacturing computer products such as notebook computers, computer peripheral equipment and other electronic products for customers to sell under their own brand name." FAC ¶ 2. The other Wistron entities are subsidiaries of Wistron Corp. *See id.* ¶¶ 3-4. As for AOpen Inc., it is also "in the business of manufacturing and selling computer products such as notebook computers and computer peripheral equipment." *Id.* ¶ 5. The other AOpen entity is a subsidiary of AOpen Inc. *See id.* ¶ 6.

As noted above, Wistron and AOpen initiated this litigation, seeking a declaration that certain patents owned by Adams are not valid and enforceable and that they do not infringe those patents. The patents at issue are as follows: '002, '222, '858, '752, '475, '601, '203, '802, '804, and '766.

In its counterclaims, Adams seeks a declaration that Wistron and AOpen do infringe four of the patents above, *i.e.*, the '002, '222, '858, and '802 patents. More specifically, Adams alleges that Wistron and AOpen are both direct infringers and indirect infringers. According to Adams, Wistron and Open have directly infringed "through, among other activities, the manufacture, use, importation, sale and/or offer for sale of computer chips, motherboards, computers and other products, as well as using infringing methods including . . . testing of [Wistron and AOpen] products as part of the manufacturing process." Countercl. ¶ 91. As for indirect infringement, Adams claims that Wistron and AOpen have (1) "knowingly and intentionally induced others to infringe . . . such as [their] customers and end-users . . . by intentionally aiding, assisting and encouraging their infringement" and (2) "knowingly contributed to the infringement of others . . . such as [their] customers and end-users . . . by supplying their technical know-how and infringing computer chips and motherboards (which are nonstaple articles of commerce having no substantial non-infringing use)." *Id.*

Adams maintains that, "at a minimum, [the] product AP58 contains an infringing Super I/O controller."[1] *Id.* ¶ 92. Adams also contends that Wistron and AOpen's products, or products imported by Wistron or AOpen, "containing a Feature Integrated Systems ('Fintek'), SMsC, Ali, SiS Super I/O or a Super I/O containing an OPUS-based FDC core or a bridge chipset containing a core of any of the previously identified components infringe one or more of the patents-in-suit." *Id.*

In addition to a claim for patent infringement, Adams asserts a claim for trade secret misappropriation. Adams contends that its trade secrets are proprietary and confidential test programs and "related technologies" that "allow users to determine, and fix, corruption defects in computers." *Id.* ¶ 99. According to Adams, in two prior lawsuits involving different alleged infringers (*i.e.*, *Gateway* and *Winbond*), it discovered that the alleged infringers and "other computer and chip manufacturers in Taiwan had obtained unauthorized and stolen copies of Adams'[s] test programs, design & test technologies and trade secret technologies, and that [the alleged infringers] were using stolen copies of Adams'[s] technologies in their manufacture, assembly, and testing of computer products." *Id.* ¶ 97. Adams alleges, upon information and belief, that, like the other alleged infringers, Wistron and AOpen made changes to their product lines based upon the unauthorized use of its stolen test programs and technologies, implying that Wistron and AOpen are part of the group of Taiwan manufacturers engaged in the theft of trade secrets. *Id.* ¶ 98.

In the currently pending motion, Wistron and AOpen ask the Court to dismiss both the patent infringement and trade secret misappropriation claims.

## II. DISCUSSION

A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the

---

[1] AP58 appears to be an AOpen product only. *See* Ratinoff Decl., Ex. 4. Adams conceded such at the hearing on the motion to dismiss.

3

nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Id.*

B. <u>Patent Infringement</u>

    1. <u>Direct Infringement</u>

In the motion to dismiss, Wistron argues that the allegations in support of the claim for direct infringement are too conclusory and therefore fail to give adequate notice under Federal Rule of Civil Procedure 8 as to what the suit is about.[2] In particular, Wistron contends that Adams's direct infringement claim is deficient unless and until Adams specifies *which* products allegedly infringe (except for one product, *i.e.*, the AP58 product which belongs to AOpen only, Adams simply refers to computer chips, motherboards, computers, and "other products") and provides information as to *how* they infringe. In response, Adams argues that its allegations are sufficient because they provide the information that is required by Form 18 of the Federal Rules of Civil Procedure and, under Rule 84, "[t]he forms in the Appendix suffice under these rules . . . ." Fed. R. Civ. P. 84 (also stating that the forms "illustrate the simplicity and brevity that these rules contemplate").

Numerous district courts have recognized that there is an apparent tension between what Form 18 and what *Twombly* and *Iqbal* deem sufficient. *See Bender v. LG Elecs. U.S.A., Inc.*, No. C 09-02114 JF (PVT), 2010 U.S. Dist. LEXIS 33075, at *15-16 (N.D. Cal. Mar. 11, 2010) (noting that "it is difficult to reconcile the guidelines set forth in *Twombly* and *Iqbal* with Form 18"). For example, Judge Seeborg noted in a 2009 decision that Form 18 seems to require nothing more than conclusory statements, *see Elan Microelecs. Corp. v. Apple, Inc.*, No. C 09-01531 RS, 2009 WL

---

[2] AOpen does not move to dismiss the claim for direct infringement.

4

2972374, at *2 (N.D. Cal. Sept. 14, 2009), while *Twombly* and *Iqbal* clearly reject conclusory allegations as inadequate. *See also Lyda v. Fremantle Media N. Am., Inc.*, No. 10 Civ. 4773 (DAB), 2011 U.S. Dist. LEXIS 77540, at *5-6 (S.D.N.Y. July 14, 2011) (noting that, prior to *Iqbal*, courts – in accordance with Form 18's predecessor – did not require plaintiffs to identify the specific infringing product or method with particularity but that, after *Twombly* and *Iqbal*, several courts have required plaintiffs to make specific allegations about infringing products in their complaints).

Most courts, however, have considered Form 18 and *Twombly/Iqbal* to conflict only with respect to the level of specificity required for the allegedly infringing product. That is, as a general matter, courts do not require a patent holder to explain in any level of detail (beyond Form 18) as to *how* a product infringes. This makes sense particularly in this District because, under its Patent Local Rules, a patent holder is obligated to provide infringement contentions shortly after the initial case management conference. *See* Pat. L.R. 3-1. Therefore, an alleged infringer is given some level of detail about the infringement early on in the case, albeit not at the outset. *See Microsoft Corp. v. Phoenix Solns., Inc.*, 741 F. Supp. 2d 1156, 1159 (C.D. Cal. 2010) (noting that "minimal pleading of direct infringement is sufficient because this Court requires the prompt filing of infringement contentions, which put the party accused of infringement on detailed notice of the basis for the allegations against it"). Accordingly, the Court rejects Wistron's contention that the patent infringement claim should be dismissed for failure to explain *how* the alleged products infringe.

Wistron, however, has a meritorious argument in favor of dismissal based on Adams's failure to specify *which* of its products allegedly infringe. (As noted above, Adams has identified one accused product owned by AOpen.) First, the Court notes that Adams has referred to infringement by "other products" without providing any further identification of such products. This bare reference to "products" is clearly inadequate. *See Acco Brands USA LLC v. Hewlett Packard Co.*, No. SACV 11-275 DOC (MLGx), 2011 U.S. Dist. LEXIS 67420, at *6 (N.D. Cal. June 23, 2011) (noting that plaintiff simply alleged that defendants' "products" infringe; "[w]ithout any sort of factual specificity in the Complaint, Moving Defendants have no notice of the claims they are required to meet and defend").

United States District Court
For the Northern District of California

Second, notwithstanding the suggestion in Form 18 that specificity is not necessary, most courts have, in the wake of *Twombly* and *Iqbal*, required some level of specificity regarding the accused product, *i.e.*, beyond the generic descriptions such as those employed by Adams ("computer chips, motherboards, computers"). Indeed, many courts have even required an exact identification. *See Bender v. LG*, 2010 U.S. Dist. LEXIS 33075, at *12 (noting that "[s]everal recent district court cases have held that the factual allegations in a patent infringement complaint must identify the specific products accused"); *Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, No. 10 C 715, 2011 U.S. Dist. LEXIS 48399, at *9 (N.D. Ill. May 5, 2011) (noting that, "[a]t a minimum, the plaintiff must plead which of the defendant's products is at issue").

To the extent Adams argues that providing an exact identification is in conflict with Federal Circuit precedent, that is not true. In fact, in *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354 (Fed. Cir. 2007) – a decision that post-dated *Twombly* but pre-dated *Iqbal* – the patent holder had provided an exact identification of the accused product. All that the Federal Circuit (in interpreting Fifth Circuit pleading requirements) stated in *McZeal* was that "a plaintiff in a patent infringement suit is not required to specifically include each element of the claims of the asserted patent."[3] *Id.* at 1357; *see also Bender v. Motorola*, 2010 U.S. Dist. LEXIS 26076, at *8-9 (concluding that plaintiff read too much into *McZeal* by claiming that, there, the Federal Circuit reaffirmed the validity of Form 18).

Accordingly, the Court grants Wistron's motion to dismiss the direct infringement claim based on a failure to specify which products allegedly infringe. The Court notes that this ruling is consistent with its prior ruling in this case on Adams's motion to dismiss, in which it held that Wistron and AOpen's failure to identify the products for which they sought a finding of noninfringement made adjudication of the infringement claim impossible. *See* Docket No. 31 (Order at 19) (stating that, absent identification of the products accused of infringement, there was no case or controversy or sufficient specificity to satisfy *Twombly* and *Iqbal*). While the dismissal here is without prejudice – *i.e.*, the Court gives Adams leave to amend to provide the requisite specificity regarding the allegedly infringing products – the Court forewarns Adams that failure to

---

[3] This is another reason not to require further detail as to how the accused products infringe.

provide sufficient specificity in its amended complaint will likely result in a dismissal with prejudice. The issue of the need to identify accused products has now been addressed in this litigation on more than one occasion.

### 2. Indirect Infringement

In its FAC, Adams asserts not only a claim for direct infringement but also a claim for indirect infringement. The indirect infringement claim is based on two different theories: (1) inducement of infringement and (2) contributory infringement.

"[T]o prevail on an inducement claim, [a] patentee must establish 'first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.'" *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007). In turn, liability for contributory infringement arises where a party "sells a component with knowledge that the component is especially designed for use in a patented invention, and is not a staple article of commerce suitable for substantial non-infringing use." *Spansion, Inc. v. ITC*, 629 F.3d 1331, 1353 (Fed. Cir. 2010).

In the instant case, although Adams has two different theories of indirect infringement, each theory is predicated on the direct infringer being either a customer of Wistron or AOpen or an end-user of one of their products. *See, e.g.*, *AquaTex Indus., Inc. v. Techniche Solns.*, 419 F.3d 1374, 1379 (Fed. Cir. 2005) (noting that, "[a]lthough not directly infringing, a party may still be liable for inducement or contributory infringement of a method claim if it sells infringing devices to customers who use them in a way that directly infringes the method claim").

Wistron and AOpen have made multiple challenges to the two indirect infringement theories, two of which are particularly compelling – *i.e.*, that, for the contribution theory, it is not entirely clear which components are at issue, *see* Countercl. ¶ 89 (claiming that Wistron and AOpen's products, or products imported by Wistron or AOpen, "containing a Feature Integrated Systems ('Fintek'), SMsC, Ali, SiS Super I/O or a Super I/O containing an OPUS-based FDC core or a bridge chipset containing a core of any of the previously identified components infringe one or more

7

of the patents-in-suit"), and that, for both the inducement and contribution theories, Adams has failed to plead the requisite knowledge.

The lack of clarity regarding which components are at issue is essentially the same problem as discussed above. As for the failure to plead knowledge, it is undisputed that, for both inducement and contribution, there must be an allegation that Wistron and AOpen knew that there was infringement. *See, e.g.*, *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2067 (2011) (stating that inducement to infringe, like contributory infringement, requires knowledge); *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1330 (Fed. Cir. 2010) (stating that, for contributory infringement, plaintiff "must show that [defendant] 'knew that the combination for which its components were especially made was both patented and infringing'"). In the counterclaims, Adams pleads knowledge of infringement, but in conclusory terms. Post-*Twombly* and *Iqbal*, courts have typically rejected conclusory allegations of knowledge. *See Iqbal*, 129 S. Ct. at 1954 (acknowledging that Federal Rule of Civil Procedure (b) allows intent to be alleged generally but noting that "'generally' is a relative term" and, for purposes of Rule 9, "merely excuses a party from pleading discriminatory intent under an elevated pleading standard"; adding that Rule 8 is not satisfied where a party simply "plead[s] the bare elements of his cause of action [and] affix[es] the label 'general allegation'"); *Air Vent, Inc. v. Owens Corning Corp.*, No. 02: 10-cv-01699, 2011 U.S. Dist. LEXIS 70833, at *15 (W.D. Pa. June 30, 2011) (noting that "the Complaint includes a single conclusory averment that Owens Corning 'knew or had reason to know' that the VentSure product would cause contributory infringement of the '574 Patent because of the prior business relationship between the parties" but that "the Complaint does not set forth any factual averments which describe why or how such a relationship would have resulted in such specific knowledge by Owens Corning"). *Compare Adaptor, Inc. v. Sealing Sys.*, No. 09-CV-1070, 2010 U.S. Dist. LEXIS 139054, at *7-8 (E.D. Wisc. Dec. 29, 2010) (finding knowledge of infringement plausible where patent holder "alleges that Adaptor had knowledge of the patent prior to creating and otherwise using or selling its systems, and that it does not have a license" and "further alleges that [patent holder] gave notice to Adaptor of the alleged infringement, but that Adaptor has nonetheless continued to engage in the complained-of actions").


Case 1:15-cv-03126-GMS Document 28-4 Filed 06/16/16 Page 10 of 13 PageID #: 644

Accordingly, the Court dismisses the indirect infringement claims, both for failure to provide the requisite specificity regarding which components are at issue and failure to plead nonconclusory facts establishing a plausible claim of knowledge. As above, the dismissal is without prejudice such that Adams may have an opportunity to amend to address this deficiency.

B. <u>Trade Secret Misappropriation</u>

Finally, Adams asserts a trade secrets claim which is based, not on California law, but rather on Utah law – *i.e.*, the Utah Uniform Trade Secret Act. Wistron and AOpen argue that the claim should be dismissed because (1) it is time barred; (2) there are insufficient jurisdictional allegations to support a claim under the Utah statute; and (3) the elements of a trade secret claim have not been adequately pled. The Court does not address the third argument because dismissal – with prejudice – is proper based on the first two arguments.

1. <u>Statute of Limitations</u>

Under Utah law, a claim for trade secret misappropriation has a limitations period of three years. Notably, the statute provides that "[a]n action for misappropriation shall be brought within three years after the misappropriation is discovered or, *by the exercise of reasonable diligence, should have been discovered.*" Utah Code Ann. § 13-24-7 (emphasis added). Here, Wistron and AOpen contend that Adams's trade secret claim is untimely because its initial counterclaim containing a trade secret claim was filed on May 23, 2011, *see* Docket No. 34 (original counterclaim), and, according to Wistron and AOpen, Adams should have discovered their alleged misappropriation more than three years before this date. The Court agrees that the allegations in the counterclaims, judicially noticeable documents (*i.e.*, opinions from another federal court in Utah), and Adams's own opposition brief establish that Adams, by the exercise of reasonable diligence, should have discovered the alleged misappropriation more than three years before May 23, 2011. *Cf. Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (noting that a claim may be dismissed as time barred under Rule 12(b)(6) when "'the running of the statute is apparent on the face of the complaint'").

According to Adams, it discovered – based on information acquired from two other lawsuits – that multiple computer and chip manufacturers in Taiwan and Asia had obtained unauthorized and

9

1 stolen copies of the alleged trade secrets. *See* Countercl. ¶ 97. One of those manufacturers was a
2 company by the name of Winbond. As the federal court in Utah determined, Adams knew or at least
3 had an extremely strong suspicion that Winbond had obtained a copy of the trade secrets by March
4 2004. *See Phillip M. Adams & Assocs., LLC v. Winbond Elecs. Corp.*, No. 1:05-CV-64 TS, 2010
5 U.S. Dist. LEXIS 90491, at *15-16 (D. Utah August 31, 2010). Adams asserts in this litigation that
6 Wistron and AOpen obtained the trade secrets at issue through use of Winbond's chips. *See* Opp'n
7 at 9. But given that Adams was on notice of Winbond's misappropriation in March 2004, it should
8 have discovered well before May 23, 2008 – more than four years later – that Wistron and AOpen
9 used the Winbond chips. Adams maintains that it was not until 2010 that evidence came to light that
10 the Winbond chips were being marketed, labeled, and sold under the marks of other companies. *See*
11 *id.* But this argument is problematic for the same reason articulated by the Utah district court – *i.e.*,
12 Adams did not have to wait until there was a legal certainty that Wistron or AOpen or even other
13 companies used the Winbond chips. *See Winbond*, 2010 U.S. Dist. LEXIS 90491, at *13-5. Once
14 Adams was on notice of the Winbond chips, it should have discovered through a reasonably diligent
15 investigation that other companies (such as Wistron and AOpen) used the chips. At the hearing
16 herein, counsel for Wistron and AOpen pointed out that chips and other components are numbered
17 or otherwise identifiable and that an exercise of reasonable diligence would have revealed any
18 connection between the alleged Winbond trade theft and Wistron/AOpen. Counsel for Adams failed
19 to meaningfully respond to the due diligence argument. The Court thus dismisses the claim for
20 misappropriation. While it is inclined to do so with prejudice and thus bar any trade theft claim to
21 which a three-year limitation period applies, *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)
22 (stating that, "in dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should
23 grant leave to amend even if no request to amend the pleading was made, unless it determines that
24 the pleading could not possibly be cured by the allegation of other facts'"), the Court will dismiss on
25 this ground without prejudice. Adams is forewarned, however, that any further assertion of a trade
26 secret claim must be supported by specific factual allegations demonstrating why, even with
27 reasonable diligence, Adams should not have known about Wistron's and AOpen's theft of trade
28

10

1 secrets. Furthermore, Adams is forewarned that any factual allegations must be supportable under
2 Federal Rule of Civil Procedure 11.

  2. <u>Jurisdictional Allegations</u>

   Wistron and AOpen argue next that the Court should dismiss the trade secret claim because it is based on Utah law and, given the allegations in the counterclaims, there is no factual nexus to Utah – *e.g.*, Adams has no connection to Adams has no connection to Utah (thus no injury was suffered there) and the alleged misappropriation took place in Asia. Wistron and AOpen assert that there is no indication that Utah intended for its laws to be given extraterritorial effect and that allowing the Utah law to be applied extraterritorially would be a violation of due process. In response, Adams does not dispute the lack of a nexus to Utah and simply argues instead that the trade secret claim should not be dismissed because it does have a trade secret claim of some kind – if not pursuant to Utah law, then the law of another state. In support of its position, Adams cites *C&F Packing Co. v. IBP, Inc.*, 224 F.3d 1296 (Fed. Cir. 2000).

   The problem for Adams is that *C&F* is distinguishable from the instant case. In *C&F*, the plaintiff had asserted a trade secret claim pursuant to Illinois law but the district court concluded that Kansas law was applicable and not Illinois law. The district court therefore dismissed the trade secrets claim. On appeal, the Federal Circuit noted that the plaintiff had presented sufficient facts to demonstrate that the trade secrets claim was plausible under the law of *either* Kansas or Illinois. (The plaintiff had argued in favor of Illinois law because the defendant transacted business there by operating Pizza Hut franchises in Illinois.) Therefore, the appeals court concluded that the district court should not have dismissed the claim but rather should have tried the case on the merits under whatever law it deemed appropriate. *See id.* at 1306. The instant case is different from *C&F* because there is nothing to indicate that Adams has a plausible claim under Utah law. If Utah law is not plausible, then dismissal is appropriate – and with prejudice.

## II. CONCLUSION

   For the foregoing reasons, the Court grants Wistron and AOpen's motion to dismiss. More specifically, the following claims are dismissed: (1) the claim for direct infringement (against Wistron only); (2) the claim for indirect infringement (against both Wistron and AOpen); and (3) the

United States District Court
For the Northern District of California

claim for trade secret misappropriation (against both Wistron and AOpen). The trade secret claim under Utah law is dismissed with prejudice. Adams is given leave to amend the other dismissed claims, including the trade secret claim so long as not based upon Utah law. Any amended counterclaims must be filed within twenty (20) days of the date of this order. Adams is forewarned that any deficiency in the amended infringement claims may well justify a dismissal with prejudice.

Because the Court is giving Adams an opportunity to amend its trade secret claim, it shall at this juncture deny – but without prejudice – Wistron and AOpen's motion for Rule 11 sanctions based on the trade secrets claim. The hearing on the Rule 11 motion is therefore **VACATED**.

This order disposes of Docket Nos. 52 and 78.

IT IS SO ORDERED.

Dated: September 12, 2011

_____
EDWARD M. CHEN
United States District Judge